**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**TAMMY S. MASSEY,**

　　　　　　　　Plaintiff,

**v.**

**NANCY A. BERRYHILL,
Acting Commissioner of Social Security,**

　　　　　　　　Defendant.

**CIVIL ACTION NO.: 2:18-CV-40
(BAILEY)**

## REPORT AND RECOMMENDATION

## I.　INTRODUCTION

　　This case arises from the denial of Plaintiff Tammy S. Massey's ("Plaintiff") Title II application for a period of disability and disability insurance benefits ("DIB") and Title XVI application for supplemental security income ("SSI"). After Plaintiff's applications proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), Karl Alexander, concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by the Appeals Counsel was denied, making the ALJ's decision the final decision of Defendant Nancy A. Berryhill ("Commissioner"), the acting Commissioner of Social Security. Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB and SSI contains no legal error and is supported by substantial evidence, the undersigned reports and recommends that Plaintiff's Motion for Summary Judgment [ECF No. 16] be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 19] be **GRANTED**.

## II.   <u>PROCEDURAL HISTORY</u>

On or about April 16, 2014, Plaintiff filed a claim for DIB, and on or about July 10, 2014, Plaintiff filed a claim for SSI. R. 59, 157. On both applications, Plaintiff alleged that her disability began on September 28, 2013. <u>Id.</u> Plaintiff's claim for DIB was initially denied on June 27, 2014. R. 86. Plaintiff's claims for DIB and SSI were denied upon reconsideration on August 8, 2014. R. 94, 97. After these denials, Plaintiff filed a written request for a hearing. R. 100. On June 15, 2016, a video hearing was held before the ALJ. R. 37. The ALJ presided over the hearing from Morgantown, West Virginia. <u>Id.</u> Plaintiff, represented by Ambria Adkins, Esq., appeared and testified from Wheeling, West Virginia. <u>Id.</u> Larry Ostrowski, a vocational expert, also appeared and testified at the hearing. <u>Id.</u> On February 28, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 28. On February 20, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

On April 12, 2018, Plaintiff, through counsel, Jan Dils, Esq., filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed her Answer and the Administrative Record of the proceedings on June 21, 2018. Answer, ECF No. 9; Admin. R., ECF No. 10. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and supporting briefs. Pl.'s Mot. Summ. J., ECF No. 16; Def.'s Mot. Summ. J., ECF No.

19. Neither party filed a response. Oral argument on the parties' motions was held before the undersigned on November 7, 2018.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, and having heard the parties' oral argument, the undersigned now issues the following Report and Recommendation.

## III.   BACKGROUND

### A.   Personal History

Plaintiff was born on March 30, 1971 and was forty-three years old at the time she filed her claims for DIB and SSI. R. 40, 59, 157. She is 5'7" and weighs approximately 247 pounds. R. 59. Plaintiff has never been married, but she lives in a house with Michael Runewicz and her two daughters. R. 157, 200. Plaintiff and Mr. Runewicz do not present themselves as husband and wife. Id. Plaintiff graduated high school and completed a 15-month medical secretary certificate program. R. 40. She has never worked as a medical secretary. Id. Prior to the alleged onset date of disability, Plaintiff worked for fifteen years at Family Dollar as a full-time assistant manager. R. 41. Plaintiff alleges that she is permanently and totally disabled due to "diabetes, migraines, degenerative disc disease, knee pain-degenerating, anemia, healy [sic] tendonitis in her left foot, and psoriatic arthritis in both hands." R. 59, 68, 76, 86.

### B.   Medical History

In accordance with the Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts in order to provide the Court with a chronology

in narrative form of Plaintiff's relevant medical history. ECF No. 12, at 2. Accordingly, the undersigned relies upon those stipulated facts throughout this report and recommendation and will not reproduce them herein. See ECF No. 16-1, at 2–5.[1]

## IV.   THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets

---

[1] The undersigned notes that the Commissioner did not provide a stipulation of facts in her brief, but provided only a short summary of Plaintiff's medical background in her Introduction. ECF No. 20, at 1.

or equals one of our listings . . . and meets the duration
requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a

listed impairment, we will assess and make a finding about your residual functional

capacity [("RFC")] based on all the relevant medical and other evidence in your case

record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

> (iv) At the fourth step, we consider our assessment of your
> [RFC] and your past relevant work. If you can still do your
> past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of
> your [RFC] and your age, education, and work experience to
> see if you can make an adjustment to other work. If you can
> make an adjustment to other work, we will find that you are
> not disabled. If you cannot make an adjustment to other
> work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the

claimant to prove that he or she is disabled and that, as a result of the disability, he or

she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d

802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the

Commissioner at step five to demonstrate that jobs exist in the national economy that

the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir.

1968). If the claimant is determined to be disabled or not disabled during any of the five

steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## V.   ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ found

that Plaintiff had not engaged in any substantial gainful activity since September 28,

2013, the onset date of Plaintiff's alleged disability. R. 18. At step two, the ALJ found

that Plaintiff suffers from following severe impairments:

> bulging discs with mild to moderate bilateral neural foraminal and central canal stenosis/multilevel spondylosis of the lumbar spine; narrowing of some cervical spine neural foramina without significant disc space narrowing/diagnosis of cervical radiculopathy; peripheral neuropathy; psoriatic arthritis; mild degenerative changes, small effusion of the right knee; minimal degenerative changes of the left knee patellofemoral compartment/small ensethophyte; very subtle arthritis changes of the bilateral knees; history of left Achilles tendon/left heel tendinitis; mixed headaches/muscle contraction/migraines; and obesity (20 CFR 404.1520(c) and 416.920(c)).

R. 19. At step three, the ALJ found that Plaintiff does not have an impairment, or

combination of impairments, that meets or medically equals the severity of one of the

listed impairments. R. 19–20. At step four, the ALJ determined that Plaintiff has the RFC

"to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with the

following limitations:

> can perform postural movements occasionally, except cannot climb ladders, ropes, or scaffolds and is limited to minimal (10 percent of the workday or less) kneeling or crawling; should do no frequent or repetitive neck movements; and should have no concentrated exposure to temperature extremes, wet or humid conditions, environmental pollutants or hazards.

R. 20. Then, the ALJ determined that Plaintiff is capable of performing past relevant

work as a combination job of a cashier [light, unskilled, DOT # 211.462-010] and cashier

supervisor [light as generally performed, medium as actually performed, skilled,

DOT # 211.137-010]. R. 26–27. At step five, the ALJ made an alternate finding and

concluded that Plaintiff is capable of performing other jobs in the national economy that

6

exist in significant numbers. R. 27–28. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. R. 28.

## VI.   DISCUSSION

### A.   Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

**B.      Contentions of the Parties**

In her Motion for Summary Judgment, Plaintiff contends that the ALJ's decision is contrary to law and not supported by substantial evidence. ECF No. 16, at 1. Specifically, Plaintiff submits that in his RFC determination: (1) "the ALJ committed reversible error when he gave 'little weight' to the opinion of Kelly Robinson, PA-C, without weighing the factors required by 20 C.F.R. §§ 404.1527, 416.927" and (2) "the ALJ violated SSR 96-8p by failing to perform a complete function-by-function analysis in forming his RFC assessment." Mem. Supp. Pl.'s Mot. J. Pleadings 1, ECF No. 16-1. Plaintiff requests that the Court remand her case for a correction of the alleged errors made by the ALJ. Id. at 11.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed as a matter of law. ECF No. 19, at 1. Addressing Plaintiff's arguments for summary judgment, the Commissioner avers that: (1) the ALJ provided a rationale, supported by substantial evidence and in conformity with controlling regulations and the law of this Circuit, in assessing the medical opinion of Ms. Robinson, and (2) the ALJ considered the relevant functions in assessing Plaintiff's work capacity as required by the Commissioner's rulings and the controlling law in this Circuit. Def.'s Br. Supp. Mot. Summ. J. 3, 9, ECF No. 20. Accordingly, the Commissioner requests that the Court affirm her decision that Plaintiff was not disabled under the Social Security Act. Id. at 12.

C.  **The ALJ's Decision was Conducted in Conformity with the Law and is Supported by Substantial Evidence**

1.  **The ALJ's Assignment of Little Weight to Ms. Robinson's Opinion is Supported by Substantial Evidence and was Determined in Conformity with the Law**

Plaintiff argues that in explaining the weight he assigned to Ms. Robinson's medical opinion, the ALJ failed to discuss the six enumerated factors outlined in the regulations. ECF No. 16-1, at 7; see 20 C.F.R. §§ 404.1527, 416.927. Plaintiff contends that the ALJ, instead, considered only one factor, supportability and that this failure to articulate his reasons for giving Ms. Robinson's opinion little weight in terms of the regulatory factors was error requiring remand. ECF No. 16-1, at 7, 9.

An ALJ must "weigh and evaluate every medical opinion in the record." Monroe v. Comm'r of Soc. Sec., No. 1:14CV48, 2015 WL 4477712, at *7 (N. D. W. Va. July 22, 2015). As an initial matter, medical opinions "on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). For example, the Commissioner is responsible for determining whether a claimant is disabled or unable to work. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Therefore, a medical source that offers an opinion on whether an individual is disabled or unable to work "can never be entitled to controlling weight or given special significance." SSR 96-5p, 1996 WL 374183, at *5.

When evaluating medical opinions not on issues reserved to the Commissioner, the ALJ must "go through the exercise of carefully balancing the evidence, assigning weights to the competing opinions . . . and explaining the rationale for doing so." Smith v. Barnhart, 395 F. Supp. 2d 298, 307 (E.D.N.C. 2005). That careful balancing necessarily requires that the ALJ explain why the "medical evidence in the record

supports the opinions or how the opinions are consistent with the medical evidence."
Buchanan v. Colvin, No. 1:14cv209, 2016 WL 485339, at *4 (W.D.N.C. Jan. 19, 2016).

The following factors are considered in deciding how to weigh any medical opinion: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Social Security Ruling 96-2p specifically addresses the ALJ's duty of explanation when a treating source opinion is not given controlling weight and the ALJ's decision is a denial of benefits, stating that:

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). Although a non-acceptable medical source opinion, such as a physician's assistant's medical opinion, is never to be given controlling weight, the ALJ is still required to consider the six factors when evaluating such an opinion. See 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1), 404.1502(a), 416.902(a). Additionally, the ALJ does not need to specifically list and address each factor in his decision, so long as sufficient reasons are given for the weight assigned to the medical opinion. See Pinson v. McMahon, 3:07-1056, 2009 WL 763553, at *10 (D.S.C. Mar. 19, 2009) (holding that the ALJ properly analyzed a treating physician's medical opinion even though he did not list the five factors and specifically address each one). The regulations explicitly recognize that, in assessing a non-acceptable

medical source opinion, some factors, such as specialty, may not be relevant to the ALJ's evaluation. See 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).

In reviewing Plaintiff's case, the ALJ was required to evaluate the opinions of Kelly Robinson, PA-C, a physician's assistant and a non-acceptable medical source under the regulations. See 20 C.F.R. §§ 404.1502(a), 416.902(a). Ms. Robinson provided two statements and a physical residual functional capacity questionnaire. Robinson's first statement, dated March 2, 2015, stated "Patient, Tammy Massey, DOB 3/30/1971, can not [sic] work at this time due to lumbar spinal stenosis, knee pain, ankle pain, and psoriatic arthritis." R. 485. Ms. Robinson's second statement, dated February 8, 2016, stated "My patient, Tammy Massey (DOB 3/3071 [sic]), is currently unable to work due to Lumbar Spinal Stenosis, Knee Pain, Ankle Pain, Psoriatic Arthritis, Rheumatoid Arthritis, CTS, and uncontrolled Diabetes II." R. 828. In her residual functional capacity questionnaire, Ms. Robinson opined that Plaintiff can sit/stand for 10 minutes at one time and can sit/stand/walk for less than 2 hours in an 8-hour work day. R. 479. She also opined that Plaintiff must walk and take unscheduled breaks of 6 to 10 minutes in length more than 7 times in an 8-hour work day. R. 479–80. Ms. Robinson opined that Plaintiff should rarely look down, look up, hold her head in a static position, twist, stoop, crouch/squat, climb ladders, or climb stairs. R. 481. Ms. Robinson also opined that Plaintiff has significant limitations with regard to reaching, handling, and fingering. Id. Finally, Ms. Robinson opined that Plaintiff is unable to work a full-time work schedule at any level of exertion. R. 482.

The ALJ assigned "little weight" to Ms. Robinson's opinions. R. 25–26. First, he noted that her statements that Plaintiff is unable to work "are not particularly probative in

this case because she has . . . offered an opinion that the claimant is disabled, a finding exclusively reserved to the Commissioner." R. 25. Second, with respect to Ms. Robinson's residual functional capacity questionnaire, the ALJ stated

> Ms. Robinson is not an acceptable medical source and her statements are not supported by the longitudinal medical evidence of record. The longitudinal medical evidence of record does not support a diagnosis of rheumatoid arthritis and generally claimant's diabetes was under control. Examinations generally found that the claimant ambulated with a steady gait, had intact motor and sensory functions, intact reflexes, and negative bilateral straight leg raising, which does not support conditions of the severity assessed by Ms. Robinson.

R. 26.

As an initial matter, the ALJ was correct to afford little weight to Ms. Robinson's statements made on March 2, 2015 and February 8, 2016. R. 485, 828. An ALJ is never required to accept a medical opinion's conclusion regarding issues solely reserved to the Commissioner for determination. SSR 96-5p, 1996 WL 374183, at *2. The Commissioner is responsible for determining whether a claimant is disabled or unable to work. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Furthermore, the medical evidence in the record indicated that Plaintiff does not have rheumatoid arthritis as Ms. Robinson articulated in her February 8, 2016 statement. See R. 19, 26, 830 (Rheumatoid factor and cyclic citrullinated peptide (anti-CCP) both negative; physician more inclined to feel that Plaintiff's symptoms are most likely psoriatic arthritis of a mild degree), 835 ("She has been told she has rheumatoid arthritis. I cannot substantiate that diagnosis on clinical grounds."). So, the ALJ was correct to afford Ms. Robinson's conclusory statements, which stated that Plaintiff was unable to work, little weight.

With regard to the ALJ's evaluation of Ms. Robinson's physical residual functional capacity questionnaire, the ALJ supported his assignment of little weight to that opinion with substantial evidence in the record. First, the ALJ concluded that Plaintiff's diabetes (a non-severe impairment) was generally under control based in part on Plaintiff's self-report to Joseph Schreiber, D.O., during her consultative examination where she denied any diabetic complications and reported that her sugar control was generally "pretty well." R. 19, 426. The ALJ also referred to medical evidence where Ms. Robinson repeatedly notated that Plaintiff's diabetes was "usually well controlled" and/or without complication. R. 460, 501, 507, 513, 519, 524, 595.

Second, the ALJ concluded that the longitudinal medical evidence (which he discussed in detail for no less than five pages) did not support the severity of limitation that Ms. Robinson reported in her residual functional capacity questionnaire. R. 21–25. The medical evidence generally demonstrated that Plaintiff had a normal gait with full strength in all extremities. R. 323, 328, 338, 429, 433–34, 492, 524, 596, 636, 895, 902, 1002. Plaintiff generally had intact motor and sensory functions and intact reflexes. R. 492, 669, 963. The medical evidence also demonstrated that treatment provided Plaintiff relief from her back, neck, and knee pain. See R. 327 (Plaintiff reports Ultram and Flexeril helps her back pain), 336 (Plaintiff reports Ibuprofen and Ultram effectively manage her lumbar and right knee pain), 962–63 (Plaintiff reports 40% improvement in back pain with injection), 971 (Plaintiff reports bilateral knee injections helped knee pain quite a bit), 982 (Plaintiff demonstrated improved cervical patterns post manual trigger point release), 986 (Plaintiff reports her neck and arm pain have significantly reduced since beginning physical therapy).

Finally, Plaintiff's activities of daily living, as discussed by the ALJ, do not support the severity of limitation contained in Ms. Robinson residual functional capacity questionnaire. See R. 25–26. Plaintiff reports that she prepares meals, cleans, and can shower without assistance. R. 186. She goes outside a lot, drives, and rides in a car. R. 188. Plaintiff also reports that she goes grocery shopping a couple of times per month. Id.; see also 429 (Plaintiff reports to Dr. Schreiber that she is able to do all of her activities of daily living). Plaintiff takes care of her cats and dogs, and she has reported soreness in her joints after taking care of her grandchild. R. 22, 186. In May 2016, Plaintiff reported moving furniture. R. 22, 994.

After a careful review of the ALJ's evaluations of Ms. Robinson's opinions and the evidence of record, the undersigned finds that the ALJ carefully balanced the evidence, assigned a weight to Ms. Robinson's opinions, and explained his rationale for doing so. See Smith, 395 F. Supp. 2d at 307. The undersigned also finds that the ALJ explained why the medical evidence and Plaintiff's activities of daily living did not support the severe limitations contained in Ms. Robinson's physical residual functional capacity questionnaire. See Buchanan, 2016 WL 485339, at *4. Accordingly, the undersigned concludes that the ALJ's decision to assign little weight to Ms. Robinson's opinions was determined in conformity with the law and is supported by substantial evidence in the record.

## 2. The ALJ's Determination of Plaintiff's RFC Does Not Frustrate Meaningful Review and Is Supported by Substantial Evidence

Plaintiff argues that the ALJ failed to perform a complete function-by-function analysis in forming his RFC assessment of Plaintiff. ECF No. 16-1, at 9. More specifically, Plaintiff alleges that the ALJ did not include an assessment of how Plaintiff's

peripheral neuropathy, cervical radiculopathy, and psoriatic arthritis would limit pertinent work activities, namely reaching, handling, and/or fingering. Id. at 10.

"The process for assessing RFC is set out in Social Security Ruling 96-8p." Monroe v. Colvin, 826 F.3d 176, 187 (4th Cir. 2016) (citing Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)); see also SSR 96-8p, 1996 WL 374184 (July 2, 1996). "Under that ruling, the assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Monroe, 826 F.3d at 187 (internal quotations omitted) (citations omitted). Only once the ALJ considers a claimant's abilities on a function-by-function basis may he then express the claimant's RFC in terms of exertional levels of work. See id. The ALJ should take care not to express the claimant's RFC in terms of exertional levels of work *first* and *then* conclude that the limitations caused by the claimant's impairments are consistent with the RFC. See id. at 188. "[E]xpressing the RFC before analyzing the claimant's limitations function by function creates the danger that 'the adjudicator [will] overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" Id. at 187–88 (quoting Mascio, 780 F.3d at 636).

Although the ALJ is required to conduct a function-by-function analysis before expressing a claimant's RFC, the United States Court of Appeals for the Fourth Circuit has not adopted "a per se rule requiring remand when the ALJ does not perform . . . [said] analysis." Mascio, 780 F.3d at 636. Instead, the Fourth Circuit has taken the approach that "remand *may* be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or

where other inadequacies in the ALJ's analysis frustrate meaningful review." Monroe, 826 F.3d at 188 (emphasis added) (quoting Mascio, 780 F.3d at 636). Accordingly, the Court must first determine whether the ALJ failed to assess Plaintiff's capacity to perform relevant functions. See id. If so, the Court must then determine whether the ALJ's failure frustrates meaningful review because of contradictory evidence or other inadequacies in the record. See id. "[A] proper function by function analysis conducted by a state agency consultant can satisfy an ALJ's requirement to conduct a function by function assessment" because these assessments, if given weight by the ALJ, "provide support for the ALJ's RFC determination and allow the Court to conduct a meaningful review of the ALJ's analysis." Sineath v. Colvin, 1:16CV28, 2016 WL 4224051, at *5 (M.D.N.C. Aug. 9, 2016), report and recommendation adopted, No. 1:16-CV-28, M.D.N.C. Sept. 13, 2016, ECF No. 18. The undersigned concludes that the ALJ's decision does not frustrate meaningful review because the record is adequate and it substantially supports the ALJ's RFC determination.

First, the ALJ discussed Plaintiff's history of psoriatic arthritis in detail. R. 24. The medical records generally showed that Plaintiff took Methotrexate and folic acid for her psoriatic arthritis which provided relief for this condition. R. 322 (Plaintiff reports feeling good overall), 336 (Plaintiff reports in general feeling well), 337 (Plaintiff negative for neuropathy and weakness), 343 (Plaintiff following up on her psoriatic arthritis treatment and reports feeling well taking Methotrexate and folic acid), 830 (Plaintiff reports improvement in the pain, swelling, and stiffness of her PIP joints with Methotrexate). During her consultative examination with Dr. Schreiber, Plaintiff reported that her fingers occasionally feel stiff, ache, or swell, but that she does not have any limitations due to

those issues. R. 427. Dr. Schreiber's examination revealed that Plaintiff had normal fine manipulation, normal upper extremity strength, and normal grip strength, all of which the ALJ specifically noted in his decision. R. 24, 433. Robert Vawter, M.D., evaluated Plaintiff for rheumatoid arthritis and concluded that Plaintiff has psoriatic arthritis of a mild degree after bilateral imaging of Plaintiff's hands, taken in December 2015, revealed no significant arthopathic features. R. 19, 830, 844.

Second, the ALJ gave significant weight to the medical opinion of state agency consultant, Rabah Boukhemis, M.D., because Plaintiff's conservative history treatment and minimal physical limitations in her activities of daily living indicate that her conditions are not as severe as she alleges. R. 26. In his medical opinion, Dr. Boukhemis opined that Plaintiff has no push/pull or manipulative limitations other than a lift/carry maximum of 50lbs (occasionally) and 25lbs (frequently). R.73–74, 81–82; see also Sineath, 2016 WL 4224051, at *5 ("[A] proper function by function analysis conducted by a state agency consultant can satisfy an ALJ's requirement to conduct a function by function assessment."). The medical evidence demonstrates that, while Plaintiff was taking Methotrexate and folic acid on the onset date of her alleged disability, Plaintiff did not report any problems related to her hands, neck, or arms at Wheeling Health Right through April 2014. See generally R. 322–45. Plaintiff was later referred to physical therapy for numbness/tingling in her hands in 2016. R. 976. Physical therapy improved Plaintiff's cervical radiculopathy, but Plaintiff stopped doing her exercises. See Section V.C.1.; see also R. 982, 986, 992 (Second to last physical therapy assessment notes indicate cervical mobility near functional at this time), 994 (Final physical therapy assessment notes indicate Plaintiff is refusing to perform

prescribed exercises). Despite the ample medical evidence in the record to support Dr. Boukhemis' opinion that Plaintiff is capable of medium exertional work with no limitation on reaching, handling, or fingering, the ALJ afforded Plaintiff the utmost benefit of the doubt by reducing Plaintiff to a more restrictive RFC of light exertional work. R. 26. In doing so, the ALJ accommodated Plaintiff's complaints of neck and arm pain by limiting her to no frequent or repetitive neck movements. R. 20.

Plaintiff's primary complaint supporting a reaching, handling, or fingering limitation came during the hearing where Plaintiff testified that she has reduced grip strength, and that her hands cause her difficulties with opening jars, dropping things, and doing buttons. R. 21, 43–45, 50–51. At the hearing, Plaintiff also reported that the Methotrexate and folic acid helps with "the swelling and stuff" in her hands. R. 48. But, Plaintiff has also reported moving furniture in May 2016 while denying that she had any radicular symptoms that she had previously reported. R. 22, 994. It is not the Court's role to reweigh conflicting evidence or substitute its judgment for the ALJ's upon review. Johnson, 434 F.3d at 653.

While the ALJ did not specifically state that he found no reaching, handling, or fingering limitations, the ALJ provided an "accurate and logical bridge" from the evidence to his conclusion such that the undersigned was able to meaningfully review the ALJ's RFC determination. See Ladda v. Berryhill, No. 17-1366, 2018 WL 5096065, at *5 (4th Cir. Oct. 18, 2018). Based on the evidence in the record regarding reaching, handling, and fingering limitations, the ALJ's decision not to include any such limitations in Plaintiff's RFC is supported by substantial evidence. Accordingly, the undersigned

concludes that the ALJ's RFC determination contains no legal error and is supported by substantial evidence in the record.

## VII.   **RECOMMENDATION**

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for DIB and SSI contains no legal error and is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 16] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 19] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objections are made and the basis for such objections. A copy of such objections should also be submitted to the Honorable John P. Bailey, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845-48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 9th day of November, 2018.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE